UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVE KLEIN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ITERUM THERAPEUTICS PLC, COREY N. FISHMAN, and JUDITH M. MATTHEWS,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Steve Klein ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Iterum Therapeutics plc ("Iterum" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Iterum securities between

1

November 30, 2020 and July 23, 2021, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Iterum is a clinical-stage pharmaceutical company that engages in developing anti-infectives for multi-drug resistant pathogens in Ireland and the U.S.  The Company is developing sulopenem, a novel anti-infective compound with oral and intravenous ("IV") formulations that is in Phase III clinical trials for the treatment of, among other medical issues, uncomplicated urinary tract infections ("uUTIs").

3.      In November 2020, Iterum submitted a New Drug Application ("NDA") to the U.S. Food and Drug Administration ("FDA") for sulopenem etzadroxil/probenecid (oral sulopenem) for the treatment of uUTIs in patients with a quinolone non-susceptible pathogen (the "sulopenem NDA").

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the sulopenem NDA lacked sufficient data to support approval for the treatment of adult women with uUTIs caused by designated susceptible microorganisms proven or strongly suspected to be non-susceptible to a quinolone; (ii) accordingly, it was unlikely that the FDA would approve the sulopenem NDA in its current form; (iii) Defendants downplayed the severity of issues and deficiencies associated with the sulopenem NDA; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.      On July 1, 2021, Iterum issued a press release "announc[ing] that the Company received a letter from the [FDA] stating that, as part of their ongoing review of the [sulopenem NDA], the agency has identified deficiencies that preclude the continuation of the discussion of labeling and post marketing requirements/commitments at this time."  The press release further stated that "[n]o details with respect to deficiencies were disclosed by the FDA in this notification and the letter further states that the notification does not reflect a final decision on the information under review."

6.      On this news, Iterum's ordinary share price fell $0.87 per share, or 37.99%, to close at $1.42 per share on July 2, 2021.

7.      Then, on July 26, 2021, Iterum issued a press release announcing that it had received a Complete Response Letter ("CRL") from the FDA for the sulopenem NDA, "provid[ing] that the FDA has completed its review of the NDA and has determined that it cannot approve the NDA in its present form."  Specifically, "the FDA determined that additional data are necessary to support approval for the treatment of adult women with [uUTIs] caused by designated susceptible microorganisms proven or strongly suspected to be non-susceptible to a quinolone[,]" while "recommend[ing] that Iterum conduct at least one additional adequate and well-controlled clinical trial, potentially using a different comparator drug[,]" and "conduct further nonclinical investigation to determine the optimal dosing regimen . . . ."

8.      On this news, Iterum's ordinary share price fell $0.499 per share, or 44.16%, to close at $0.631 per share on July 26, 2021.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

12.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  The offices of Iterum's U.S. Operations are in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

13.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

14.     Plaintiff, as set forth in the attached Certification, acquired Iterum securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.     Defendant Iterum is organized under the laws of Ireland with principal executive offices located at Block 2 Floor 3, Harcourt Centre, Harcourt Street, Dublin 2, Ireland.  The offices of the Company's U.S. Operations are located at 200 South Wacker Drive, Suite 2550, Chicago, Illinois 60606.  Iterum's ordinary shares traded in an efficient market on the Nasdaq Capital Market

and the Nasdaq Global Market (collectively, the "NASDAQ") under the ticker symbol "ITRM" throughout the Class Period.

16.     Defendant Corey N. Fishman ("Fishman") has served as Iterum's President and Chief Executive Officer at all relevant times.

17.     Defendant Judith M. Matthews ("Matthews") has served as Iterum's Chief Financial Officer at all relevant times.

18.     Defendants Fishman and Matthews are sometimes referred to herein as the "Individual Defendants."

19.     The Individual Defendants possessed the power and authority to control the contents of Iterum's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Iterum's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Iterum, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

20.     Iterum and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

21.     Iterum is a clinical-stage pharmaceutical company that engages in developing anti-infectives for multi-drug resistant pathogens in Ireland and the U.S.  The Company is developing sulopenem, a novel anti-infective compound with oral and "IV formulations that is in Phase III clinical trials for the treatment of, among other medical issues, uUTIs.

22.     In November 2020, Iterum submitted an NDA to the FDA for sulopenem etzadroxil/probenecid (oral sulopenem) for the treatment of uUTIs in patients with a quinolone non-susceptible pathogen.

### Materially False and Misleading Statements Issued During the Class Period

23.     The Class Period begins on November 30, 2020, when Iterum issued a press release during pre-market hours announcing that the Company had submitted the sulopenem NDA to the FDA (the "November 2020 Press Release").  That press release represented that "[t]he NDA submission includes data from the SURE-1, SURE-2 and SURE-3 phase 3 clinical trials, in which oral sulopenem was well tolerated with no significant drug related adverse events[,]" and that "[t]he SURE-1 clinical trial (uUTIs) demonstrated statistical superiority of oral sulopenem to the widely used comparator, ciprofloxacin, for the primary efficacy endpoint of clinical and microbiologic response at the test-of-cure visit for patients with a quinolone non-susceptible pathogen."

24.     The November 2020 Press Release also quoted Defendant Fishman, who represented that "[t]he submission of the NDA filing for oral sulopenem is a significant step forward in bringing new antibiotics to patients to help address the challenge of antibiotic resistance"; that "[o]ral sulopenem, if approved, would mean that physicians and patients have the

6

opportunity to benefit from the proven efficacy and safety of penem antibiotics that, to date in the U.S., have only been available in IV formulations"; and that "[w]e are now one step closer to realizing the goal of bringing this much needed medicine to the over six million patients with cipro-resistant UTIs each year in the U.S."

25. On January 25, 2021, Iterum issued a press release announcing that the FDA had accepted the sulopenem NDA for review (the "January 2021 Press Release"). That press release contained substantively the same statements as referenced in ¶ 23, *supra*, describing the data included in the sulopenem NDA, while also advising that "[t]he FDA has designated this application as a priority review and consequently assigned a PDUFA (Prescription Drug User Fee Act) goal date for completion of the review of oral sulopenem of July 25, 2021."

26. The January 2021 Press Release also quoted Defendant Fishman, who represented that "[t]he FDA acceptance of our NDA for review is an important milestone for Iterum"; that, "[i]f approved, oral sulopenem would be the first penem available orally in the U.S. with the ability to treat multi-drug resistant infections in the community"; and that, "[s]pecifically, this important antibiotic is one step closer to relieving the growing problem of quinolone resistance found in over six million [uUTIs] in the U.S. each year."

27. On March 12, 2021, Iterum issued a press release announcing its fourth quarter and full year 2020 financial results (the "4Q/FY20 Press Release"). That press release stated, *inter alia*, that "[i]n January 2021, the FDA accepted for review our NDA for uUTI in patients with a quinolone non-susceptible organism[,]" and that "[t]he FDA currently plans to hold an advisory committee meeting to discuss the NDA on June 2, 2021."

28. The 4Q/FY20 Press Release also quoted Defendant Fishman, who represented, in relevant part:

We estimate that the market for th[e sulopenem NDA's] indication is approximately 6.5 million uUTIs caused by a quinolone non-susceptible organism annually in the U.S. . . . . Our priorities for the rest of this year are: (1) holding a positive Advisory Committee meeting in June, (2) completion of FDA review of our NDA by the end of July, (3) initiating the commercial launch in the fourth quarter, if approved, and (4) working with the FDA to understand the requirements for potential expansion of our label in uUTI to include all patients, if approved, and to potentially add the complicated urinary tract infection (cUTI) indication. In anticipation of these key milestones, we have raised sufficient capital to support the execution of our strategy as currently planned."

29. Also on March 12, 2021, Iterum filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2020 (the "2020 10-K"). The 2020 10-K touted the data supporting the sulopenem NDA, while assuring investors that the Company had made an informed NDA submission based on prior communications with the FDA. Specifically, the 2020 10-K stated, in relevant part, that "in the uUTI trial, in the population of patients with baseline pathogens resistant to quinolones, sulopenem achieved the related primary endpoint by demonstrating superiority to ciprofloxacin, providing evidence of a treatment effect in patients with uUTI"; and that, "[b]ased on discussions with the FDA at a pre-New Drug Application, or NDA, meeting in September 2020" as well as "previous correspondence with the FDA, we submitted an NDA for oral sulopenem for the treatment of uUTIs in patients with a quinolone non-susceptible pathogen in the fourth quarter of 2020 and the FDA accepted the application for review in January 2021."

30. Appended as exhibits to the 2020 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Individual Defendants certified that "[t]he [2020 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange Act]" and that "[t]he information contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

31.     On May 14, 2021, Iterum issued a press release announcing its first quarter 2021 financial results (the "1Q21 Press Release").  That press release advised, *inter alia*, that "[t]he FDA previously planned to hold an advisory committee meeting for oral sulopenem on June 2, 2021 but this meeting was postponed to allow the FDA more time to review material provided by the Company in support of the NDA"; and that "[a] new date for such meeting, if required by the FDA, has not yet been confirmed.

32.     The 1Q21 Press Release also quoted Defendant Fishman, who represented that "[w]e continue to prepare for a[n FDA] advisory committee meeting and look forward to clarity from the FDA on timing"; that, "[i]n the meantime, the FDA continues its review of [the sulopenem NDA] and has not advised us of any change to the current PDUFA goal date of July 25, 2021"; and that, "[w]ith an FDA decision on oral sulopenem expected in the second half of 2021 and a strong cash position, we are preparing for a launch of oral sulopenem into the community in the fourth quarter of 2021, if approved."

33.     Also on May 14, 2021, Iterum filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2021 (the "1Q21 10-Q").  The 1Q21 10-Q contained substantively the same statements as referenced in ¶ 29, *supra*, describing the data supporting the sulopenem NDA, while assuring investors that the Company had made an informed NDA submission based on prior communications with the FDA.

34.     Appended as exhibits to the 1Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 30, *supra*, signed by the Individual Defendants.

35.     On May 27, 2021, Iterum issued a press release providing an update on the FDA's review of the sulopenem NDA, stating that "the Company participated in a late-cycle meeting with the [FDA] yesterday"; that, "[d]uring the meeting, the FDA shared issues still under review

regarding the [sulopenem NDA] and the Company responded to these issues"; that "[t]he FDA has determined that an Advisory Committee meeting is not currently necessary"; and that "[t]he review of the NDA is ongoing and the Company was informed that the FDA continues to work toward the PDUFA goal date of July 25, 2021."

36.     The statements referenced in ¶¶ 23-35 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the sulopenem NDA lacked sufficient data to support approval for the treatment of adult women with uUTIs caused by designated susceptible microorganisms proven or strongly suspected to be non-susceptible to a quinolone; (ii) accordingly, it was unlikely that the FDA would approve the sulopenem NDA in its current form; (iii) Defendants downplayed the severity of issues associated with the sulopenem NDA; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

37.     On July 1, 2021, post-market, Iterum issued a press release announcing that the FDA had identified deficiencies with the sulopenem NDA (the "July 1, 2021 Press Release"). Specifically, that press release stated, in relevant part, that "the Company received a letter from the [FDA] stating that, as part of their ongoing review of the [sulopenem NDA], the agency has identified deficiencies that preclude the continuation of the discussion of labeling and post marketing requirements/commitments at this time."

38.     On this news, Iterum's ordinary share price fell $0.87 per share, or 37.99%, to close at $1.42 per share on July 2, 2021.  Despite this decline in the Company's ordinary share price,

Iterum securities continued to trade at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding the sulopenem NDA's deficiencies.

39.    For example, the July 1, 2021 Press Release downplayed the severity of the sulopenem NDA's deficiencies, stating, in relevant part, that "[n]o details with respect to deficiencies were disclosed by the FDA in this notification and the letter further states that the notification does not reflect a final decision on the information under review[,]" and that "[t]he Company intends to work with the FDA to understand the nature of the deficiencies and resolve them as quickly as possible."

40.    The July 1, 2021 Press Release also quoted Defendant Fishman, who likewise downplayed the severity of the sulopenem NDA's deficiencies, advising investors, in relevant part, that "we continue to believe in the potential of sulopenem to help address the growing challenge of antibiotic resistance," and that "[o]ur goal now is to work with the FDA to identify and resolve the issues as expeditiously as possible in order to continue advancing this much needed antibiotic."

41.    The statements referenced in ¶¶ 39-40 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.    Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the sulopenem NDA lacked sufficient data to support approval for the treatment of adult women with uUTIs caused by designated susceptible microorganisms proven or strongly suspected to be non-susceptible to a quinolone; (ii) accordingly, it was unlikely that the FDA would approve the sulopenem NDA in its current form; (iii) Defendants downplayed the severity of deficiencies

associated with the sulopenem NDA; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Fully Emerges**

42.     On July 26, 2021, pre-market, Iterum issued a press release announcing that it had received a CRL from the FDA for the sulopenem NDA, "provid[ing] that the FDA has completed its review of the NDA and has determined that it cannot approve the NDA in its present form." That press release also disclosed, in relevant part:

> In the CRL, the FDA acknowledged that the Phase 3 SURE-1 clinical trial demonstrated statistical significance in difference in overall response rate of oral sulopenem compared to ciprofloxacin in the ciprofloxacin-resistant population. However, the FDA determined that additional data are necessary to support approval for the treatment of adult women with [uUTIs] caused by designated susceptible microorganisms proven or strongly suspected to be non-susceptible to a quinolone. The FDA recommended that Iterum conduct at least one additional adequate and well-controlled clinical trial, potentially using a different comparator drug. Additionally, the FDA recommended that Iterum conduct further nonclinical investigation to determine the optimal dosing regimen, although the FDA stated that this recommendation does not raise an approvability issue. The FDA indicated its willingness to work with Iterum on the design of the clinical trial(s) to address the deficiencies noted.

> * * *

> "We are disappointed in this outcome and believe that the data package submitted was adequate for the approval of oral sulopenem," said [Defendant] Fishman, Chief Executive Officer.   "Regardless, we will evaluate the points raised in the CRL for discussion with the FDA to determine an expeditious path forward. We remain confident in the value of, and unmet medical need for, oral sulopenem to treat multi-drug resistant infections, including fast-growing quinolone non-susceptible pathogens."

> Iterum intends to review the CRL with its advisors and plans to request a Type A meeting in the coming weeks. Following the Type A meeting, anticipated to be late in the third quarter, Iterum expects to provide an update on next steps as to the potential additional clinical and non-clinical work to be done prior to a resubmission of the NDA for approval of oral sulopenem.

43.     On this news, Iterum's ordinary share price fell $0.499 per share, or 44.16%, to close at $0.631 per share on July 26, 2021.

44.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Iterum securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

46.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Iterum securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Iterum or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

47.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

48.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

49.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Iterum;

- whether the Individual Defendants caused Iterum to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Iterum securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

50.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

51.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Iterum securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Iterum securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

52.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

53.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

54.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

55. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

56. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Iterum securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Iterum securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

57. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Iterum securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Iterum's finances and business prospects.

58. By virtue of their positions at Iterum, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended

thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

59.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Iterum, the Individual Defendants had knowledge of the details of Iterum's internal affairs.

60.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Iterum. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Iterum's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Iterum securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Iterum's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Iterum securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

61.     During the Class Period, Iterum securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Iterum securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Iterum securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Iterum securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

62.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

63.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## **COUNT II**

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

64.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65.     During the Class Period, the Individual Defendants participated in the operation and management of Iterum, and conducted and participated, directly and indirectly, in the conduct of Iterum's business affairs.  Because of their senior positions, they knew the adverse non-public information about Iterum's misstatement of income and expenses and false financial statements.

66.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Iterum's financial condition and results of operations, and to correct promptly any public statements issued by Iterum which had become materially false or misleading.

67.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Iterum disseminated in the marketplace during the Class Period concerning Iterum's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Iterum to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Iterum within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Iterum securities.

68.     Each of the Individual Defendants, therefore, acted as a controlling person of Iterum.  By reason of their senior management positions and/or being directors of Iterum, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Iterum to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Iterum and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

69.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Iterum.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  August 5, 2021                     Respectfully submitted,

                                           POMERANTZ LLP

                                           */s/ Jeremy A. Lieberman*
                                           Jeremy A. Lieberman
                                           J. Alexander Hood II
                                           600 Third Avenue, 20th Floor
                                           New York, New York 10016
                                           Telephone: (212) 661-1100
                                           Facsimile: (917) 463-1044
                                           jalieberman@pomlaw.com
                                           ahood@pomlaw.com

                                           POMERANTZ LLP
                                           Patrick V. Dahlstrom
                                           Louis C. Ludwig
                                           10 South LaSalle Street, Suite 3505
                                           Chicago, Illinois 60603
                                           Telephone: (312) 377-1181

Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com
lcludwig@pomlaw.com

*Attorneys for Plaintiff*