UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVE KLEIN, Individually and On Behalf of All Others Similarly Situated, | Civil Action No. 1:21-cv-04181 |
| Plaintiff, | |
| v. | CLASS ACTION |
| ITERUM THERAPEUTICS PLC, COREY N. FISHMAN, and JUDITH M. MATTHEWS, | Hon. Gary Feinerman |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
STEVEN PAGLIARO AND SEAN HEGARTY FOR APPOINTMENT AS
CO-LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL**

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 3

ARGUMENT .................................................................................................................... 4

I.  PAGLIARO AND HEGARTY SHOULD BE APPOINTED CO-LEAD PLAINTIFFS... 4

    A.  Pagliaro and Hegarty Are Willing to Serve as Class Representatives ................... 5

    B.  Pagliaro and Hegarty Have the "Largest Financial Interest" in the Action ........... 6

    C.  Pagliaro and Hegarty Otherwise Satisfy the Requirements of Rule 23 ................. 6

II.  CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED... 10

CONCLUSION ................................................................................................................ 11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnet v. Elan Corp., PLC*,
  236 F.R.D. 158 (S.D.N.Y. 2005) ...............................................................................................9

*Bristol County Ret. Sys. v. Allscripts Healthcare Solutions, Inc.*,
  No. 12 C 3297, 2012 WL 5471110, 2012 U.S. Dist. LEXIS 161441 (N.D. Ill.
  Nov. 9, 2012) .............................................................................................................................8

*Chandler v. Ulta Beauty, Inc.*,
  No. 18-cv-1577, 2018 WL 3141763, 2018 U.S. Dist. LEXIS 107340 (N.D. Ill.
  June 26, 2018)........................................................................................................................7, 8

*City of Sterling Heights Gen. Emples. Ret. Sys. v. Hospira, Inc.*,
  No. 11 C 8332, 2012 WL 1339678, 2012 U.S. Dist. LEXIS 54081 (N.D. Ill.
  Apr. 18, 2012) ...........................................................................................................................8

*Gumm v. Molinaroli*,
  No. 16-CV-1093-PP, 2016 WL 6680462, 2016 U.S. Dist. LEXIS 157155
  (E.D. Wis. Nov. 14, 2016) .........................................................................................................7

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
  2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017) ......................................................................9, 10

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d. Cir. 2001)......................................................................................................9

*In re Molson Coors Brewing Co. Sec. Litig.*,
  233 F.R.D. 147 (D. Del. 2005) .................................................................................................10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) ..................................................................................................7

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ..................................................................................................7

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
  311 F.R.D. 373 (S.D.N.Y. 2015) ..............................................................................................10

*Lax v. First Merchants Acceptance Corp.*,
  Nos. 97 C 2715 *et al.*, 1997 WL 461036, 1997 U.S. Dist. LEXIS 11866 (N.D.
  Ill. Aug. 6, 1997)....................................................................................................................6, 7

*Maiden v. Merge Techs., Inc.*,
  Nos. 06-C-349, 2006 WL 3404777, 2006 U.S. Dist. LEXIS 85635 (E.D. Wis.
  Nov. 21, 2006) ..............................................................................................................10

*Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
  2012 U.S. Dist. LEXIS 89192 (D. Vt. Apr. 27, 2012)...............................................10

*Takara Trust v. Molex Inc.*,
  229 F.R.D. 577 (N.D. Ill. 2005)..................................................................................8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008)........................................................................10

*Weltz v. Lee*,
  199 F.R.D. 129 (S.D.N.Y. 2001) .................................................................................9

*West Palm Beach Police Pension Fund v. DFC Global Corp.*,
  2014 U.S. Dist. LEXIS 49595 (E.D. Pa. Apr. 9, 2014) .............................................10

**Statutes**

15 U.S.C. § 78j(b) ............................................................................................................1

15 U.S.C. § 78u-4(a)(3) .........................................................................1, 2, 5, 6, 9, 10

PSLRA ..........................................................................................1, 2, 4, 6, 7, 9, 10

**Rules**

Fed. R. Civ. P. 23.................................................................................2, 3, 4, 5, 6, 7, 8

**Other Authorities**

17 C.F.R. § 240.10b-5......................................................................................................1

Steven Pagliaro and Sean Hegarty (together, "Pagliaro and Hegarty") respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) appointing Pagliaro[1] and Hegarty as Co-Lead Plaintiffs on behalf of a class consisting of all persons and entities other than the above-captioned defendants ("Defendants") that purchased or otherwise acquired Iterum Therapeutics plc ("Iterum" or the "Company") securities between November 30, 2020 and July 23, 2021, both dates inclusive (the "Class Period") (the "Class"); and (2) approving proposed Co-Lead Plaintiffs' selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

The initial complaint in the above-captioned action ("Action") alleges a significant fraud perpetrated on the investors in Iterum during the Class Period. Specifically, it is alleged that, during the Class Period, Defendants defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and United States ("U.S.") Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5), by misrepresenting Iterum's business and operations, specifically regarding the insufficiency of the data Iterum submitted to the U.S. Food and Drug Administration ("FDA") in support of a New Drug Application ("NDA") for sulopenem etzadroxil/probenecid (oral sulopenem) for the treatment of uUTIs in patients with a quinolone non-susceptible pathogen (the "sulopenem NDA"). *See Klein v. Iterum Inc. et al*, 1: 21-cv-04181, Dkt. No. 1 ("Complaint") ¶¶ 1-9. Iterum

---

[1] Pagliaro pursues claims in this litigation both on his own behalf and on behalf of SJP Trading and Investments LLC, from which he has received a valid assignment of those claims. *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Exhibit ("Ex.") A.

investors, including Pagliaro and Hegarty, incurred significant losses resulting from the revelation of the foregoing misconduct through corrective disclosures on July 1, 2021 and July 26, 2021, revealing, *inter alia*, that the FDA had identified deficiencies with the sulopenem NDA and therefore would not approve the sulopenem NDA in its current form.

Pursuant to the PSLRA, the Court is to appoint as lead plaintiffs the movants that possess the largest financial interest in the outcome of the Action and that satisfy the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Pagliaro and Hegarty, with losses of approximately $281,513 in connection with their Class Period purchases of Iterum securities, believe that they have the largest financial interest in the relief sought in this Action. *See* Lieberman Decl., Ex. B.

Beyond their considerable financial interest, Pagliaro and Hegarty also meet the applicable requirements of Rule 23 because their claims are typical of absent Class members and because they will fairly and adequately represent the interests of the Class.

To fulfill their responsibilities as lead plaintiffs and vigorously prosecute this Action on behalf of the Class, Pagliaro and Hegarty have selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, based on their significant financial interest and their commitment to overseeing this litigation, Pagliaro and Hegarty respectfully request that the Court enter an order appointing them as Co-Lead Plaintiffs for the Class and approving their selection of Pomerantz as Lead Counsel for the Class.

**STATEMENT OF FACTS**

As alleged in the Complaint, Iterum is a clinical-stage pharmaceutical company that engages in developing antiinfectives for multi-drug resistant pathogens in Ireland and the U.S. Complaint ¶ 2. The Company is developing sulopenem, a novel anti-infective compound with oral and intravenous formulations that is in Phase III clinical trials for the treatment of, among other medical issues, uncomplicated urinary tract infections ("uUTIs"). *Id.*

In November 2020, Iterum submitted the sulopenem NDA to the FDA. *Id.* ¶ 3.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. *Id.* ¶ 4. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the sulopenem NDA lacked sufficient data to support approval for the treatment of adult women with uUTIs caused by designated susceptible microorganisms proven or strongly suspected to be nonsusceptible to a quinolone; (ii) accordingly, it was unlikely that the FDA would approve the sulopenem NDA in its current form; (iii) Defendants downplayed the severity of issues and deficiencies associated with the sulopenem NDA; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times. *Id.*

On July 1, 2021, Iterum issued a press release "announc[ing] that the Company received a letter from the [FDA] stating that, as part of their ongoing review of the [sulopenem NDA], the agency has identified deficiencies that preclude the continuation of the discussion of labeling and post marketing requirements/commitments at this time." *Id.* ¶ 5. The press release further stated that "[n]o details with respect to deficiencies were disclosed by the FDA in this notification and the letter further states that the notification does not reflect a final decision on the information under review." *Id.*

3

On this news, Iterum's ordinary share price fell $0.87 per share, or 37.99%, to close at $1.42 per share on July 2, 2021.  *Id.* ¶ 6.

Then, on July 26, 2021, Iterum issued a press release announcing that it had received a Complete Response Letter from the FDA for the sulopenem NDA, "provid[ing] that the FDA has completed its review of the NDA and has determined that it cannot approve the NDA in its present form."  *Id.* ¶ 7.  Specifically, "the FDA determined that additional data are necessary to support approval for the treatment of adult women with [uUTIs] caused by designated susceptible microorganisms proven or strongly suspected to be non-susceptible to a quinolone[,]" while "recommend[ing] that Iterum conduct at least one additional adequate and well-controlled clinical trial, potentially using a different comparator drug[,]" and "conduct further nonclinical investigation to determine the optimal dosing regimen . . . ."  *Id.*

On this news, Iterum's ordinary share price fell $0.499 per share, or 44.16%, to close at $0.631 per share on July 26, 2021.  *Id.* ¶ 8.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Pagliaro and Hegarty, and other Class members, have suffered significant losses and damages.  *See id.* ¶ 9.

## ARGUMENT

### I. PAGLIARO AND HEGARTY SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

Pagliaro and Hegarty should be appointed Co-Lead Plaintiffs because, to their knowledge, they have the largest financial interest in the Action and otherwise strongly satisfy the requirements of Rule 23.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so

by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Specifically, the Court "shall" appoint the presumptively "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

 (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Pagliaro and Hegarty satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Co-Lead Plaintiffs for the Class.

### A. Pagliaro and Hegarty Are Willing to Serve as Class Representatives

On August 5, 2021, Pomerantz, counsel for the plaintiff in the Action, caused a notice to be published over *PRNewswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "Notice"), which announced that litigation had been filed against Defendants and which advised investors in Iterum securities that they had until October 4, 2021—*i.e.*, 60 days—to file a motion to be appointed as lead plaintiff in the securities litigation against Iterum and the other Defendants. *See* Lieberman Decl., Ex. C. Pagliaro and Hegarty have filed the instant motion pursuant to the Notice, and have attached sworn Certifications attesting that they are willing to serve as representatives for the Class and to provide testimony at deposition and trial, if

5

necessary. *See id.*, Ex. D. Accordingly, Pagliaro and Hegarty satisfy the first requirement to serve as Co-Lead Plaintiffs of the Class.

**B.      Pagliaro and Hegarty Have the "Largest Financial Interest" in the Action**

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of their knowledge, Pagliaro and Hegarty have the largest financial interest of any Iterum investors seeking to serve as Lead Plaintiffs. For the purposes of lead plaintiff appointment pursuant to the PSLRA, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. Nos. 97 C 2715 *et al.*, 1997 WL 461036, 1997 U.S. Dist. LEXIS 11866, at *17 (N.D. Ill. Aug. 6, 1997).

During the Class Period, Pagliaro and Hegarty: (1) purchased 304,845 shares of Iterum securities; (2) expended $499,589 on these purchases; (3) retained 210,500 of their shares of Iterum securities; and (4) incurred losses of approximately $281,513 in connection with their transactions in Iterum securities during the Class Period. *See* Lieberman Decl., Ex. B. To the extent that Pagliaro and Hegarty possess the largest financial interest in the outcome of this litigation, they are the presumptive "most adequate" plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

**C.      Pagliaro and Hegarty Otherwise Satisfy the Requirements of Rule 23**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, lead plaintiffs must

"otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

In making its determination that lead plaintiffs satisfy the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, at this stage of the litigation, only a preliminary showing of typicality and adequacy is required. *See, e.g.*, *Chandler v. Ulta Beauty, Inc.*, No. 18-cv-1577, 2018 WL 3141763, 2018 U.S. Dist. LEXIS 107340, at *13 (N.D. Ill. June 26, 2018) (finding movant "has satisfied its burden by making a preliminary showing that it satisfies the requirements of Rule 23"); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required."). Moreover, "in the context of motions for lead plaintiff inquiries, courts . . . do not engage in a 'wide-ranging analysis under Rule 23,' and generally focus on only typicality and adequacy." *Gumm v. Molinaroli*, No. 16-CV-1093-PP, 2016 WL 6680462, 2016 U.S. Dist. LEXIS 157155, at *14 (E.D. Wis. Nov. 14, 2016) (quoting *Lax*, 1997 WL 461036, U.S. Dist. LEXIS 11866, at *6); *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA.").

The typicality requirement of Rule 23(a)(3) requires that "'[a] claim . . . arises from the same event or practice or course of conduct that gives rise to the claims of other class members'

7

and is 'based on the same legal theory.'" *Bristol County Ret. Sys. v. Allscripts Healthcare Solutions, Inc.*, No. 12 C 3297, 2012 WL 5471110, 2012 U.S. Dist. LEXIS 161441, at *15-*16 (N.D. Ill. Nov. 9, 2012) (quoting *Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008)). "A lead plaintiff meets the typicality requirements if its claims or defenses are typical of the claims or defenses of the class." *Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 580 (N.D. Ill. 2005) (quoting Fed. R. Civ. P. 23(a)(3)).

Pagliaro and Hegarty's claims are typical of those of the Class. Pagliaro and Hegarty allege, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts and/or omitting to disclose material facts concerning Iterum. Pagliaro and Hegarty, as did all members of the Class, purchased Iterum securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosure of those misrepresentations and/or omissions that drove Iterum's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

"A lead plaintiff meets the adequacy requirement [of Rule 23(a)(4)] if (1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced counsel who be able to prosecute the litigation vigorously." *Chandler*, 2018 WL 3141763, 2018 U.S. Dist. LEXIS 107340, at *14 (quoting *City of Sterling Heights Gen. Emples. Ret. Sys. v. Hospira, Inc.*, No. 11 C 8332, 2012 WL 1339678, 2012 U.S. Dist. LEXIS 54081, at *25 (N.D. Ill. Apr. 18, 2012)).

As set forth in greater detail below, in Pomerantz, Pagliaro and Hegarty have retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submit their choice of Pomerantz to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). There is no evidence of antagonism or conflict between Pagliaro and Hegarty's interests and the interests of the Class. Pagliaro and Hegarty have submitted signed Certifications declaring their commitment to protecting the interests of the Class (*see* Lieberman Decl., Ex. D). In addition, the significant losses incurred by Pagliaro and Hegarty demonstrate that they have a sufficient interest in the outcome of this litigation to ensure vigorous adequacy.

Moreover, Pagliaro and Hegarty constitute an appropriate group of the type routinely appointed to serve as Lead Plaintiffs. *See, e.g.*, *In re Blue Apron Holdings, Inc. Sec. Litig.,* 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding that a group of seven shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding that "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiff); *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d. Cir. 2001) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff") (citation omitted).

Further demonstrating their adequacy, Pagliaro and Hegarty have submitted a Joint Declaration attesting to, *inter alia*, their backgrounds, their investing experience, their understanding of the responsibilities of a lead plaintiff pursuant to the PSLRA, their decision to seek appointment jointly as co-lead plaintiffs, and the steps that they are prepared to take to

9

cooperatively prosecute this litigation on behalf of the Class. *See* Lieberman Decl., Ex. E. Courts routinely appoint investor groups as lead plaintiff under such circumstances. *See, e.g.*, *Blue Apron*, 2017 WL 6403513, at \*4 (appointing group of four unrelated investors that submitted declaration attesting "it is prepared to work cooperatively to serve the best interests of the class," and finding that the group is not "so large as to be unwieldy and impracticable"); *West Palm Beach Police Pension Fund v. DFC Global Corp.*, 2014 U.S. Dist. LEXIS 49595, at \*7 (E.D. Pa. Apr. 9, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, 2012 U.S. Dist. LEXIS 89192, at \*11 (D. Vt. Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

## II.     CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in lead plaintiffs to select and retain lead counsel, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with lead plaintiffs' choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Maiden v. Merge Techs., Inc.*, Nos. 06-C-349, 2006 WL 3404777, 2006 U.S. Dist. LEXIS 85635, at \*14 (E.D. Wis. Nov. 21, 2006); *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Pagliaro and Hegarty have selected Pomerantz as Lead Counsel for the Class. Pomerantz is a premier firm, highly experienced in the areas of securities litigation and class action lawsuits,

which has successfully prosecuted numerous such actions on behalf of investors over its 80+ year history, as detailed in its firm resume. *See* Lieberman Decl., Ex. F. Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010. *Id.* Most recently, Pomerantz announced as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors that it has reached a $110 million settlement with the company. *See id.* As a result of its extensive experience in similar litigation, Pagliaro and Hegarty's choice of counsel, Pomerantz, has the skill, knowledge, expertise, resources, and experience that will enable the firm to prosecute the Class's claims in this litigation effectively and expeditiously. The Court may be assured that by approving Pagliaro and Hegarty's selection of Pomerantz as Lead Counsel, the Class members will receive the best legal representation available. Thus, Pagliaro and Hegarty respectfully urges the Court to appoint Pomerantz to serve as Lead Counsel.

Pagliaro and Hegarty respectfully submit that appointment of Pomerantz as Lead Counsel in this Action is appropriate and in the best interests of the Class. Pomerantz's attorneys include counsel admitted to practice in Illinois and/or before this Court. Additionally, Pomerantz maintains an office in Chicago, Illinois.

## CONCLUSION

For the foregoing reasons, Pagliaro and Hegarty respectfully request that the Court issue an Order: (1) appointing Pagliaro and Hegarty as Co-Lead Plaintiffs for the Class; and (2) approving their selection of Pomerantz as Lead Counsel for the Class.

11

Dated:  October 4, 2021

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Thomas H. Przybylowski
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
tprzybylowski@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
Louis C. Ludwig
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com
lcludwig@pomlaw.com

*Counsel for Lead Plaintiff Movants*
*Steven Pagliaro and Sean Hegarty*

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Lead Plaintiff Movants*
*Steven Pagliaro and Sean Hegarty*

12