UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| STEVE KLEIN, Individually and on Behalf of All Others Similarly Situated, ) ) | Case No.  1:21-cv-04181 |
| ) | |
| Plaintiff, ) | CLASS ACTION |
| ) | |
| ) | Judge Gary Feinerman |
| vs. ) | |
| ) | |
| ITERUM THERAPEUTICS PLC, et al., ) ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

OPPOSITION TO COMPETING MOTIONS FOR
APPOINTMENT AS LEAD PLAINTIFF

4854-7014-3232.v1

## I.     INTRODUCTION AND BACKGROUND

Three motions were filed by class members seeking appointment as lead plaintiff and approval of counsel pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"): (1) Ian Grocher, Thomas L. Sullivan, and Gert-Paul van' t Hoff (collectively, the "Movants"); (2) Steven Pagliaro and Sean Hegarty;[1] and (3) Jacob Brevard and May Hlaing. *See* ECF Nos. 12, 15, 19. Based on information contained in the original submissions by the lead plaintiff movants, the Movants are the "most adequate plaintiff" within the meaning of the PSLRA. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The Movants' losses of approximately $841,118 are more than the losses claimed by the other lead plaintiff movants ***combined***, and the Movants otherwise meet the "typicality" and "adequacy" requirements of Rule 23 of the Federal Rules of Civil Procedure. Accordingly, the Movants should be appointed as Lead Plaintiff and their selection of Robbins Geller Rudman & Dowd LLP as Lead Counsel should be approved. The competing motions should be denied.

## II.     ARGUMENT

### A.     The Movants Meet the PSLRA's Requirements and Should Be Appointed Lead Plaintiff

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii)(I), the presumptive lead plaintiff is the movant: (1) with the "largest financial interest in the relief sought by the class"; and (2) who otherwise satisfies the requirements of Rule 23. *See also Mortimer v. Diplomat Pharmacy Inc.*, 2019 WL 3252221, at *1 (N.D. Ill. July 19, 2019).

Here, according to each of the lead plaintiff movants' claimed losses, there is no legitimate dispute that the Movants possess the "largest financial interest" in this litigation:

---

[1]     On October 22, 2021, Pagliaro and Hegarty filed a Notice of Non-Opposition to Competing Motions for Appointment as Lead Plaintiff and Approval of Lead Counsel. *See* ECF No. 31.

| MOVANT | CLAIMED LOSS |
|---|---|
| **The Movants** | $841,118 |
| Pagliaro and Hegarty | $281,513 |
| Brevard and Hlaing | $273,417 |

Moreover, there are infirmities with certain of the other individual movants' claimed losses. For example, Mr. Pagliaro's claimed loss is overstated by approximately $44,703 because Account 2 improperly combined the cost ($44,125) of Iterum Therapeutics plc shares purchased during the Class Period with the proceeds ($22,353) received from the subsequent sale of those shares. *See* ECF No. 12-4 at 2. When properly netted (*i.e.*, proceeds subtracted from cost), the actual loss is $21,771.50 for Pagliaro's Account 2, resulting in a total loss of $127,101, which decreases Pagliaro and Hegarty's cumulative loss to $236,810:

| MOVANT | LOSS |
|---|---|
| **The Movants** | **$841,000** |
| Brevard and Hlaing | $273,417 |
| Pagliaro and Hegarty | Pagliaro: $127,101<br>Hegarty: $109,705<br>Total: $236,810 |

Brevard and Hlaing's financial interest is also not what it initially seems. Specifically, Hlaing was a "net seller" and "net gainer" during the Class Period, which subjects Hlaing to unique defenses and makes Hlaing ineligible for appointment as lead plaintiff. During the Class Period, Hlaing purchased 678,390 shares of Iterum stock but sold 770,903 shares during this same time period – *i.e.*, 92,513 more shares than were purchased. *See* ECF No. 17-2 at 2-3. Because Hlaing sold more shares than Hlaing bought during the Class Period, Hlaing is a "net seller." *See Plymouth Cty. Ret. Sys. v. Apache Corp.*, 2021 WL 4726510, at *2 (S.D. Tex. Oct. 6, 2021). Additionally, Hlaing is a "net gainer," as the cost of the Iterum shares Hlaing purchased was $1,437,960.45, while the proceeds from Hlaing's sales of Iterum stock during the Class Period was $1,448,025.31,

- 2 -

resulting in a gain of $10,064.86. As a net seller *and* net gainer, Hlaing ***benefitted*** from the alleged artificial inflation during the Class Period. *Id.* at *3. Courts overwhelmingly hold that net sellers and net gainers – like Hlaing – are atypical of the rest of the putative class because they benefitted from the alleged fraud, and, as such, are precluded from being appointed as lead plaintiff because they benefitted from the fraud, rendering them atypical and inadequate. *See id.* ("'Courts have consistently rejected applications for lead plaintiff status made by 'net sellers' and 'net gainers' recognizing that they may in fact have profited, rather than suffered, as a result of the inflated stock prices.'") (quoting *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173 (W.D.N.Y. 2007)); *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 946 (N.D. Ill. 2001) (plaintiff who sold more shares than it purchased during class period was "totally out of the running for designation as lead plaintiff"); *Born v. Quad/Graphics, Inc.*, 2020 WL 994427, at *2 (S.D.N.Y. Mar. 2, 2020) ("Anklis is a 'net seller' and 'net gainer' during the *Born* Class Period, meaning that he sold more shares than he purchased and earned more in proceeds than he spent – a fact Anklis does not contest. . . . That status effectively disqualifies Anklis . . . .").[2]

_____

[2]   Courts around the country are in accord. *See also Deering v. Galena Biopharma, Inc.*, 2014 WL 4954398, at *11 (D. Or. Oct. 3, 2014) ("courts around the country consistently have rejected applications for lead plaintiff made by net sellers and net gainers, recognizing the difficulty of proving damages at trial"); *Hodges v. Immersion Corp.*, 2009 WL 5125917, at *2 (N.D. Cal. Dec. 21, 2009) ("A 'net seller's' motion for appointment as lead plaintiff is properly denied where the net seller obtained a 'net gain' from its sales occurring in the putative class period."); *Weisz v. Calpine Corp.*, 2002 WL 32818827, at *7 (N.D. Cal. Aug. 19, 2002) (removing from consideration lead plaintiff applicant that sold more shares than it purchased during class period because it was "apparent that [applicant] may have actually profited, not suffered losses, as a result of the allegedly artificially inflated stock price"); *City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, 2017 WL 6028213, at *2 (N.D. Ohio Dec. 5, 2017) ("The thought is that a plaintiff who sells during the class period has benefitted from the fraudulently inflated price of the stock while shareholders who hold on to their stock throughout the class period are left holding the bag when the fraud is revealed and the price of the stock drops."); *In re Organogenesis Sec. Litig.*, 241 F.R.D. 397, 401 (D. Mass. 2007) ("Where Class Period sales exceed purchases, there is a very real possibility that Lead Plaintiff Madigan actually benefitted from the allegedly inflated price during the Class Period."); *Frank v. Dana Corp.*, 237 F.R.D. 171, 172 (N.D. Ohio 2006) ("Because parties which are net sellers and net gainers, with respect to the relevant securities transactions during the class period,

- 3 -

Although Hlaing may claim an alleged last-in, first-out ("LIFO") loss of $139,338.50, that fact is irrelevant to the "net seller" and "net gainer" analysis. *See Plymouth Cty.*, 2021 WL 4726510, at \*4 (rejecting lead plaintiff movant's argument that he was "not a net gainer because he suffered losses under a LIFO analysis of his transactions during the class period. But that argument goes nowhere. LIFO losses are completely irrelevant to the net gainer analysis."); *Scheller v. Nutanix, Inc.*, 2021 WL 2410832, at \*7 (N.D. Cal. June 10, 2021) (rejecting lead plaintiff movant's argument that he should not be considered a "net gainer" because he had "'suffered sizeable [LIFO] losses'"). The court's decision in *Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at \*9 (N.D. Cal. Feb. 15, 2011) provides a helpful explanation as to the rationale behind rejecting net sellers and net gainers as a lead plaintiff. In *Perlmutter,* a lead plaintiff movant was challenged on the basis that he was a net seller and net gainer during the class period but nonetheless argued that he still suffered an overall loss on his class period purchases in the defendant company's stock. *Id.* The court rejected his argument, explaining that "[t]he purpose of isolating the calculation of net sales and net gains to the Class Period is to determine whether a party potentially benefitted from the fraud." *Id.* The court further noted:

> This is not the same as determining whether a party lost or earned money trading in a particular stock. As alleged in the complaint, Defendants' fraud artificially inflated Intuitive's stock price during the Class Period. Thus, when Marcus purchased Intuitive stock prior to the Class Period, he purchased it at fair market value. When he sold it during the Class Period, however, he sold it at fraudulently inflated prices. As a result, instead of being injured by the fraud on these sales, Marcus actually benefitted from the fraud.

may have more trouble proving damages at trial, courts frequently reject their applications to serve as lead plaintiffs."); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio 2005) (finding lead plaintiff movant group subject to unique defenses because two of its members experienced net gains during class period); *In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372, 378 (E.D. Va. 2003) ("The fact that [the movant] sold more shares than it purchased during the class period 'undermines [the movant's] contention that it has the largest financial interest in the case. . . .'"). Unless otherwise noted herein, all emphasis is added and citations are omitted.

- 4 -

*Id.*

Here, Hlaing received more money selling shares at artificially inflated prices during the Class Period than Hlaing spent purchasing shares. As in *Perlmutter*, this reality "makes it more likely that [Hlaing] benefitted from Defendants' alleged fraud." 2011 WL 566814, at *9. "Even if [Hlaing] lost money in all of [Hlaing's Iterum] stock transactions, this amount was reduced by [Hlaing's] Class Period sales when the stock prices were inflated." *Id.* Consequently, Hlaing cannot be appointed lead plaintiff.

After adjusting for the infirmities detailed above, the Movants' superior financial interest is even more apparent, as reflected in the following table:

| MOVANT | LOSS |
|---|---|
| **The Movants** | **$841,118** |
| Pagliaro and Hegarty | $236,810 |
| Brevard ~~and Hlaing~~ | ~~$273,417~~<br>Brevard: $134,079<br>~~Hlaing: $139,338.50~~ |

It short, with losses of $841,118, the Movants possess the "largest financial interest" in this litigation.

Aside from having the largest financial interest, the PSLRA requires that, to be designated the presumptively most adequate plaintiff, the Movants must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(cc). Here, there is no question that the Movants satisfy this requirement. *See* ECF No. 20 at 4-6. The Movants' claims are "typical" of the claims of the proposed class because, like all members of the putative class, the Movants: (1) purchased Iterum securities during the Class Period; (2) were adversely affected by defendants' false and misleading statements and omissions; and (3) suffered damages thereby. *Id.* at 4. The Movants

satisfied their adequacy requirement, as demonstrated by the submission of their sworn Certifications and a Joint Declaration that confirm their willingness and ability to serve as lead plaintiff. *Id*. at 5; ECF Nos. 19-2, 19-4. Because the Movants clearly have the largest financial interest and satisfy Rule 23's requirements, the Movants are presumptively the "most adequate plaintiff."

**B.     The Presumption of "Most Adequate Plaintiff" Which Lies in Favor of the Movants Cannot Be Rebutted**

The presumptive lead plaintiff, in this case the Movants, must be appointed unless it is ***proven*** that they will not satisfy the typicality and adequacy requirements of Rule 23(a). "[O]nce the presumption is triggered, the question ***is not*** whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[] and adequate[]' job." *In re Cendant Corp. Litig*., 264 F.3d 201, 268 (3d Cir. 2001) (emphasis in original); *see also In re Cavanaugh*, 306 F.3d 726, 730-32 (9th Cir. 2002).

There can be no dispute that the Movants meet the adequacy and typicality requirements. *See* ECF No. 20 at 4-6. In addition, no competing movant can present proof to rebut the presumption which lies in favor of the Movants. The Movants also have selected counsel which is highly experienced in securities litigation. *See id*. at 6-7. Consequently, the presumption of "most adequate plaintiff" which lies in favor of the Movants cannot be rebutted. The Movants' motion for appointment as lead plaintiff and approval of selection of counsel should be granted. Conversely, the motions filed by Steven Pagliaro, Sean Hegarty, Jacob Brevard, and May Hlaing should be denied because none can trigger the PSLRA's presumption, nor can they rebut the presumption in favor of the Movants with the requisite proof.

- 6 -

4854-7014-3232.v1

## III.    CONCLUSION

The Movants possess the largest financial interest in the relief sought by the class.  In addition, the Movants meet the requirements of adequacy and typicality, and the presumption which lies in favor of the Movants cannot be rebutted.  The remaining movants lack the largest financial interest in the relief sought by the class.  As a result, the Movants respectfully request that this Court enter an order: (1) appointing the Movants to serve as Lead Plaintiff in the action; (2) approving the Movants' selection of Lead Counsel; and (3) denying the motions for appointment as lead plaintiff filed by Steven Pagliaro, Sean Hegarty, Jacob Brevard, and May Hlaing.

DATED:  October 22, 2021

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS (ILND-GB-5711)
JENNIFER N. CARINGAL (ILND-GB-286197)
MICHAEL ALBERT
JUAN CARLOS SANCHEZ


                              s/ Danielle S. Myers
                           DANIELLE S. MYERS

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
jcaringal@rgrdlaw.com
malbert@rgrdlaw.com
jsanchez@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
BRIAN E. COCHRAN (IL Bar # 6329016)
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)
bcochran@rgrdlaw.com

- 7 -

4854-7014-3232.v1

- 8 -

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

4854-7014-3232.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on October 22, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Danielle S. Myers
DANIELLE S. MYERS

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: dmyers@rgrdlaw.com

4854-7014-3232.v1

Case: 1:21-cv-04181 Document #: 34 Filed: 10/22/21 Page 11 of 11 PageID #:525

# Mailing Information for a Case 1:21-cv-04181 Klein v. Iterum Therapeutics plc et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Megan Barriger**
  Megan.Barriger@wilmerhale.com

- **Michael G. Bongiorno**
  Michael.Bongiorno@wilmerhale.com

- **Jennifer Nunez Caringal**
  jcaringal@rgrdlaw.com

- **Brian E. Cochran**
  BCochran@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas F. Falkenberg**
  tff@falkenbergives.com,ag@falkenbergives.com

- **Carol V Gilden**
  cgilden@cohenmilstein.com,lhoeksema@cohenmilstein.com,efilings@cohenmilstein.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,tcrockett@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Louis Carey Ludwig**
  lcludwig@pomlaw.com,kgutierrez@labaton.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)